THE F. A. CIGOL RUBBER COMPANY, a corporation, complainant-respondent,

*v.*

FRANK A. CIGOL, defendant-appellant.

[Decided April 28th, 1922.]

On appeal from a decree in the court of chancery advised by Vice-Chancellor Fielder, who delivered the following opinion orally:

"I shall state my conclusions in this matter very briefly because I do not think it necessary to go into this matter at any

42

great length. I am satisfied from the evidence in this case that there was an arrangement followed by an agreement between the directors of the company, that the company should purchase from Mr. Cigol the letters-patent issued to him and his rights under applications for letters-patent then pending, and that he agreed to sell to the company those patents and those rights under the applications. All the evidence in the case indicates that that is the fact and that such was the understanding between the three members of the board of directors in their conferences held prior to the meeting of the stockholders of the company at which formal action was taken by the stockholders and the subsequent action, which it is admitted was taken by the board of directors. If there were any doubt in my mind as to the agreement that had been entered into between these three men prior to the meetings of the stockholders, that doubt would be resolved against the defendant in this case after reading the minutes of the meeting of May 8th and the resolution then adopted and for which Mr. Cigol voted. He sat in that meeting and took part in the formal proceedings of the meeting, and he acquiesced in the purpose of the meeting not only by his presence and failure to object, but by his affirmative action in voting in favor of the resolution. I have no doubt, therefore, that he did agree to assign the patents and the patent rights that are the subject of this suit to the corporation, and that there was no tacit understanding or express agreement between Mr. Cigol and the other stockholders or other directors of the company that the resolution, which is very clear and plain, should not be carried out by performance on his part in the assignment of the patent rights that he held.

"I am also satisfied that he agreed to assign the patent rights in consideration of the issue of twelve thousand nine hundred and four shares of common stock to him, and that the stock was so issued and that he has received the consideration for which he agreed to make the assignment. What he subsequently did with that consideration is of little importance in this case.

"Now, the remaining defence is that the property was not worth the par value of the stock issued. But Mr. Cigol sat in the board and he determined, with the other directors, that the

patent rights which he was to assign to the company were worth the par value of the stock that he agreed to accept as consideration for the sale of such property. If what he said by his action in the board of directors and at the stockholders' meeting was not true, he would have been guilty of a fraud upon anybody who was acting in good faith without knowledge of the actual facts, and under the amendment to section 49 of the Corporation act, passed in 1913, chapter 15 of that year, if he executed the certificate required by the act, he was guilty of a misdemeanor with the other directors or other officers and liable, of course, to punishment for misdemeanor under the Crimes act of the state. But it appears that the only persons affected by the issue of this stock, including the purchaser of the $100,000 of preferred stock issued at the same time, had full knowledge of all the facts, understood what was being done and took the new stock, common and preferred, with a full understanding of the whole situation; that there was no one else concerned in the transaction; there were no creditors, no persons to be affected by the act of the stockholders and directors. I do not understand that the Corporation act, applying to this situation, makes such action illegal or void. The question of the amount of consideration paid for the stock may be raised in a proper case, and it might be possible, if anyone else were affected by this transaction, that the stockholders of the company who took this stock with knowledge of the fact [if it was a fact] that the property purchased was not of the value of the stock, would be required to pay into the company the difference between the value of the property purchased and the par value of the stock; but after the stock once issued had reached the hands of the persons who agreed to take it with full knowledge of the facts, I think it would be exceedingly inequitable that Mr. Cigol, who, I find, entered into this transaction with full knowledge of what he did, acquiescing in the action of his co-directors and participating in their action, getting stock for which he failed to give the consideration he agreed to give, should now be permitted to take advantage of a wrong in which he participated. My conclusion is that the prayer of the bill of complaint should be granted and a decree for specific performance directing Mr. Cigol to trans

fer these patents and patent rights to the company should be entered."

*Mr. Gustav A. Hunziker,* for the defendant-appellant.

*Messrs. Lindabury, Depue & Faulks,* for the complainant-respondent.

PER CURIAM.

The decree appealed from will be affirmed, for the reasons stated in the opinion delivered by Vice-Chancellor Fielder in the court of chancery.

*For affirmance*—THE CHIEF-JUSTICE, SWAYZE, TRENCHARD, PARKER, BERGEN, MINTURN, KALISCH, BLACK, KATZENBACH, WHITE, HEPPENHEIMER, WILLIAMS, GARDNER, ACKERSON, VAN BUSKIRK—15.

*For reversal*—None.